MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2026 ME 81
Docket:        WCB-25-66
Argued:        December 10, 2025
Decided:       August 6, 2026

Panel:         STANFILL, C.J., and MEAD, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

CAROL BREWSTER

v.

S.D. WARREN/SAPPI N.A. et al.

LAWRENCE, J.

[¶1]   S.D. Warren Company/Sappi North America and its third-party administrator (collectively, S.D. Warren) appeal from a divided decision of the Appellate Division of the Workers' Compensation Board affirming a decision of the Workers' Compensation Board Administrative Law Judge (*Stovall, ALJ*) awarding death benefits to Donald Nadeau's former spouse, Carol Brewster. This appeal presents the question of whether 39 M.R.S.A. § 58 (Pamph. 1984)[1] requires a person to be dependent on an injured employee at both the time of injury and the time of death in order to be entitled to death benefits, as S.D.

---

[1]  The 1984 supplementary pamphlet to the Maine Revised Statutes Annotated contains the version of section 58 that was effective on the date of Nadeau's injury.  This statute, and not the current death benefits statute, was used because the Legislature indicated that the former Title 39 would govern any death benefits claims for pre-1993 injuries. *See* P.L. 1991, ch. 885, § A-10 (effective Jan. 1, 1993).

2

Warren contends, or whether being dependent on the employee at the time of the injury is sufficient. We conclude that the unambiguous language of section 58 ties the determination of dependency to the time of injury alone and therefore affirm the decision of the Appellate Division awarding death benefits to Brewster.

## I. BACKGROUND

[¶2] Nadeau and Brewster were married at the time Nadeau slipped and fell while working for S.D. Warren on April 28, 1985. He sustained injuries to multiple body parts, causing chronic pain, mobility issues, and substantial weight gain. During their marriage and until the date of his injury, Nadeau worked full-time at S.D. Warren while Brewster worked part-time as a nurse. The two shared joint checking and savings accounts and owned a house and cars titled in both of their names. The parties divorced in 1997 with no requirement that Nadeau pay Brewster spousal support. Brewster remarried in 2011. During Brewster's second marriage, she and her husband maintained their assets and finances separately except for a joint account used to pay shared living expenses.

[¶3] Nadeau died in September 2020 as a result of complications from his work-related injuries. Shortly after that, Brewster filed a petition for death

benefits with the Workers' Compensation Board. *See* 39 M.R.S.A. § 58. After a contested hearing, the ALJ entered a decree that found that Brewster was living with and dependent upon Nadeau at the time of his injury and therefore met the definition of "dependent" under 39 M.R.S.A. § 2(4).[2] It also found that Brewster had not become a "dependent of another person" and therefore did not become ineligible to receive death benefits. *See* 39-A M.R.S. § 102(9) (2026).[3] Despite Brewster having been divorced from Nadeau for twenty-three years at the time of his death, the ALJ concluded that Brewster was entitled to receive death benefits, interpreting section 58 to mean that a person need be dependent on the employee only at the time of injury to be eligible for death benefits. S.D. Warren moved for further findings of fact and conclusions of law, which the ALJ denied. *See* 39-A M.R.S. § 318 (2026).

[¶4] S.D. Warren appealed the decision to the Appellate Division, arguing, among other things, that the language of section 58 requires a death-benefit claimant to have been dependent on the employee both at the time of injury and at the time of death. *See* 39-A M.R.S. § 321-B (2026). The

---

[2] It is unclear which version of this statute the ALJ used in applying the definition of "dependent." Because Title 39 was repealed and replaced with Title 39-A, any reliance on any definitions under Title 39 means that a predecessor to the current statutory definitions was used. *See* P.L. 1991, ch. 885, §§ A-7 to A-8 (effective Jan. 1, 1993).

[3] We cite to the 2026 volume of the Maine Revised Statutes where the section, subsection, or subparagraph has not been amended since the time of the ALJ's decision in 2023.

4

Appellate Division affirmed the ALJ's decision awarding death benefits to Brewster, concluding that the ALJ did not err in interpreting section 58 to require a person to be dependent on the employee only at the time of injury in order to be eligible for death benefits. S.D. Warren petitioned for appellate review of the Appellate Division's decision, and we granted its petition. *See* 39-A M.R.S. § 322 (2026); M.R. App. P. 23(b)-(c).

## II. DISCUSSION

[¶5] S.D. Warren contends that the Appellate Division misinterpreted section 58 to require a person to be dependent on the employee only at the time of injury, and not also at the time of the injured employee's death, to be eligible to receive death benefits. Brewster argues that the plain language of section 58 and applicable case law require proof only that the person was dependent on the employee at the time of injury. There is no disagreement between the parties that Brewster was in fact dependent upon Nadeau at the time of his injury in 1985. So, we proceed to consider whether Brewster is entitled to death benefits under section 58 because she was Nadeau's dependent and was dependent on him at the time of his injury, despite not being dependent on him at the time of his death.

## A. Standard of Review and Rules of Statutory Construction

[¶6]  We review the Appellate Division's interpretation of the Workers' Compensation Act de novo.  *Charest v. Hydraulic Hose & Assemblies, LLC*, 2021 ME 17, ¶ 10, 247 A.3d 709.  "Our main objective in statutory interpretation is to give effect to the Legislature's intent."  *Urrutia v. Interstate Brands Int'l*, 2018 ME 24, ¶ 12, 179 A.3d 312 (quotation marks omitted).  To do so, we look first at the plain meaning of the statutory language to discern the Legislature's intent and construe it to avoid absurd, illogical, or inconsistent results, considering the entire statutory scheme so that harmonious results are achieved.  *Id.*  "If a statute is unambiguous, we will not defer to an agency's interpretation of that statute," *id.*, and we will "look to legislative history and other extraneous aids" only if the statute is ambiguous, *Roy v. Bath Iron Works*, 2008 ME 94, ¶ 10, 952 A.2d 965.

## B. Interpretation of 39 M.R.S.A. § 58

[¶7]  Applying the above principles of statutory construction, we conclude that section 58 unambiguously requires a claimant to show only that the claimant was dependent on the employee at the time of injury to qualify as a recipient of death benefits.  We reach this result based on the plain language

of section 58, the definition of "dependent" found in 39-A M.R.S. § 102(8),[4] and the purposes of the Act.

[¶8]  Section 58 provides: "If death results from the injury, the employer shall pay the *dependents* of the employee, *dependent* upon his earnings for support at the time of his injury, a weekly payment." (Emphasis added.)  It thus follows that the word "dependents" identifies the pool of the employee's family members who are potential death-benefit payees; the subset of that pool who can be recipients of this benefit is then gleaned from the statutory definition of "dependent."  Section 102(8) defines "dependent" as

> a member of an employee's family or that employee's next of kin who is wholly or partly dependent upon the earnings of the employee for support at the time of injury.  The following persons are conclusively presumed to be wholly dependent for support upon a deceased employee:
>
> **A.** A spouse of the deceased employee who was living with the employee at the time of the employee's death, who was living apart from the employee for a justifiable cause or because the spouse had been deserted by the employee or who was actually dependent in any way upon the employee at the time of injury.

---

[4] Each party relied on a different version of the definition of "dependent" in their briefing—S.D. Warren applies the repealed version from Title 39 because that is what the ALJ and Appellate Division relied on, whereas Brewster applies the current version from Title 39-A.  Under *Beaulieu v. Maine Medical Center*, 675 A.2d 110, 111 (Me. 1996), "the definitional provisions of Title 39-A, section 102, apply retroactively to pre-1993 injuries." *Cribben v. Cent. Me. Home Improvements*, 2000 ME 124, ¶ 4 n.2, 745 A.2d 350.  Therefore, we rely on the definition provisions found in Title 39-A.  However, the definition of "dependent" is largely the same, except Title 39-A uses more contemporary language. *Compare* 39 M.R.S.A. § 2(4) (1978), *with* 39-A M.R.S. § 102(8) (2026).

This definition makes clear that the dependency determination is tied to the time of the injury. When the word "dependent" is used, it is, as Brewster suggests, part of a participial phrase modifying the word "dependents." This makes it clear that an employee's dependents eligible to receive death benefits are established based only on dependency extant at the time of injury.[5]

[¶9] The statutory scheme as a whole makes evident that the Legislature intended to tie death benefits to the time of injury, unless it is specifically prescribed otherwise by another provision. In addition to the phrase "at the time of injury" being included in section 58, this phrase appears in every subparagraph of the definition of "dependent." *See* 39-A M.R.S. § 102(8). "At the time of injury" is most notably used in the final subparagraph of section 102(8) which states, "[i]n all other cases, questions of total or partial dependency must be determined in accordance with the fact as the fact was *at the time of injury*." (Emphasis added.)

[¶10] By contrast, when the Legislature intended to tie death benefits to the claimant's relationship with an employee at the time of death, it did so explicitly. For instance, one class of individuals conclusively presumed to be

---

[5] S.D. Warren counters that the second use of dependent(s) is instead an adjective used to modify the first set of dependents existing at the time of death because otherwise, there would be no reason to use the adjective at all. This reading is contrary to the definition of "dependent" under section 102(8), which very clearly ties dependency to the time of injury.

dependent upon an employee are "spouse[s] of the deceased employee who [were] living with the employee *at the time of the employee's death*." *Id.* § 102(8)(A) (emphasis added). This explicit departure from the repeated and pointed use of the phrase "at the time of injury" makes clear that if the Legislature intended eligibility for death benefits under section 58 to be tied to the time of death in any way, it knew how to do so and could have expressly included the phrase "at the time of death" after the word "dependents" in the first sentence. To interpret the statute to encompass this additional requirement would either add words to section 58 that are not present or infer their presence without any apparent textual justification or support. This in turn would not only determine Brewster's ability to obtain an award for death benefits but would also impact the interpretation of the current version of the death-benefits statute, which is nearly identical to section 58.[6]

[¶11] S.D. Warren asserts that awarding death benefits to an ex-spouse would be an absurd or illogical result that serves no rational purpose. Our precedent, however, supports the opposite conclusion. We had the opportunity to analyze the language of the death-benefits statute and definition of

---

[6] The current version of the death-benefits statute, 39-A M.R.S. § 215 (2026), provides in pertinent part: "[I]f death results from the injury of the employee, the employer shall pay or cause to be paid to the dependents of the employee who were wholly dependent upon the employee's earnings for support at the time of injury a weekly payment."

"dependent" in previous cases, albeit none that address the exact issue presented here. *See Cribben v. Cent. Me. Home Improvements*, 2000 ME 124, 754 A.2d 350; *Ladner v. Mason Mitchell Trucking Co.*, 434 A.2d 37 (Me. 1981).

[¶12]   In *Cribben*, 2000 ME 124, ¶ 1, 754 A.2d 350, we interpreted 39 M.R.S.A. § 58-A (1989) in the context of death benefits for a child of an employee.  There, we held that "[f]or a child to be treated as a 'dependent' pursuant to workers' compensation law, the child must have been dependent upon the employee, either wholly or partially, 'at the time of injury.'"  *Id.* ¶ 5. The employee in *Cribben* was injured in 1990 and had a child born in 1992.  *Id.* ¶ 2.  The employee died in 1996, and the child petitioned for death benefits under section 58-A, which provided in pertinent part: "If death results from the injury, the employer shall pay the dependents of the employee, dependent upon the employee's earnings for support at the time of injury, a weekly payment." *Id.* ¶¶ 2-3.  The child argued that the definition of "dependent" should be read broadly to include children born between the date of injury and the date of death.  *Id.* ¶ 5.  We examined the language of section 58-A and 39-A M.R.S.A. § 102(8) (Pamph. 1999) to first determine who were the employee's dependents and then to determine which of them were entitled to payments because they were financially dependent upon the employee at the time of

injury. *Id.* ¶¶ 3-4. Interpreting that language, we held that because the child was not yet born and thus not yet dependent on the employee at the time of injury, the child was not entitled to death benefits. *Id.* ¶ 6.

[¶13] It may well give pause that a child, only four years of age, is not entitled to death benefits solely because the child was not alive and therefore not dependent on the employee at the time of the employee's injury. However, the plain language of the statute unambiguously provides for that result. In *Cribben*, we did not view section 58-A as ambiguous or susceptible to different interpretations and thus were "constrained" to apply the straightforward, unambiguous language to the facts of the case and reached a result that was contrary to what "we recognize[d as] valid policy arguments." *Id.* ¶ 6. Although there may be sound policy reasons that could support the denial of benefits to Brewster, as in *Cribben*, the plain language of the statute compels a different result.[7] *See id.*

[¶14] S.D. Warren, relying on our decision in *Ladner*, contends that because Brewster did not have any expectation at the time of Nadeau's death

---

[7] *Cribben* has been utilized in secondary materials to support the proposition that under date-of-injury statutes, a child born between the time of injury and the time of death would be excluded from receiving death benefits. *See* A. Larson & Lex K. Larson, *Larson's Workers' Compensation Law*, § 98.05(3) n.7 (2025). While not binding or relevant at the plain language step of statutory interpretation, these materials nonetheless lend support to the interpretation that Maine's death benefits statute uses the date of injury to determine dependency.

that she would receive support by him in the future, she did not suffer an economic loss and therefore is not entitled to death benefits. *See Ladner*, 434 A.2d at 41. This argument misses the mark because in *Ladner*, we addressed the question whether the children of the deceased employee who died in a work-related accident were "dependent in any way" upon him when he had a legal obligation to support them through child support payments but did not do so. *Id.* at 39-41. There, we reiterated that "dependency under the Act requires, in addition to a duty to support, some evidence of a reasonable probability and expectation that the obligation . . . will be fulfilled and thereby have some real as well as mere theoretical value."[8]  *Id.* at 41 (quotation marks omitted). In *Ladner*, the employee died immediately and the relevant inquiry was therefore whether at the time of the employee's death the children had an expectation that they would be supported in the future. *Id.* at 39-41. Effectively, the children were not dependent on the employee at the time of injury, which in the circumstances of that matter happened to coincide with the time of death. That is not the case here—the parties do not dispute that Brewster was

---

[8] In *Ladner*, we also explained that "the purpose of death benefits is to compensate dependents for their *economic* loss resulting from the employee's death." 434 A.2d at 41. That case presented the factual scenario where the employee's death was immediate, which is not the case here where there was a thirty-five-year gap between injury and death. While the purpose expressed in *Ladner* may be frustrated by our holding in this case, we again are constrained by the plain language of section 58, and the facts do not compel a different result.

dependent upon Nadeau at the time of his injury. Therefore, the facts and analysis in *Ladner* do not translate seamlessly to the scenario presented in this case.

[¶15] Finally, the overall purpose of the Act "is to lift the burden of industrial accidents from injured workmen and their dependents and place it on industry, and finally through insurance premiums, distribute it to society as a whole." *Opinion of the Justices*, 315 A.2d 847, 853 (Me. 1974). Moreover, "[t]he legislative intent in enacting a comprehensive workers' compensation statute was to give effect to the underlying policy of providing certainty of remedy to the injured employee and absolute but limited and determinate liability for the employer." *Li v. C.N. Brown Co.*, 645 A.2d 606, 608 (Me. 1994) (alterations and quotation marks omitted). Interpreting section 58 to require dependency only at the time of injury comports with the overarching general statutory purpose to lift the burden from dependents of employees, which Brewster undoubtably was at the time of injury. *Opinion of the Justices*, 315 A.2d at 853. It also provides certainty for employees and limited but clear-cut liability for employers because it attaches the dependency determination to a fixed point in time, unchangeable by what is to come after the date of injury. *See Li*, 645 A.2d at 608.

[¶16] Therefore, the plain language of the statute, read in the context of the statutory scheme and in light of the purposes of the Act, compels us to conclude, consistently with our holding in *Cribben*, that section 58 requires only that a claimant be dependent on the injured employee at the time of injury to qualify for death benefits.

The entry is:

> Decision of the Workers' Compensation
> Appellate Division affirmed.

---

Daniel Gilligan, Esq. (orally), Troubh Heisler LLC, Scarborough, for appellants S.D. Warren Co./Sappi N.A. and CCMSI

James J. MacAdam, Esq. (orally), MacAdam Law Offices, P.A., Freeport, for appellee Carol Brewster

Workers Compensation Board Appellate Division docket number 23-0018
FOR CLERK REFERENCE ONLY